Elizabeth HANSBURY,
Plaintiff-Appellant,

v.

The REGENTS OF the UNIVERSITY OF
CALIFORNIA, Los Alamos Scientific
Laboratory, and Harold Agnew, Individ-
ually, Defendants-Appellees.

No. 77–1308.

United States Court of Appeals,
Tenth Circuit.

April 18, 1979.

Anne K. Bingaman, Santa Fe, N. M., for plaintiff-appellant.

Susan Amateau, Berkeley, Cal. (with Donald L. Reidhaar, Aletha R. Titmus and John Lundberg, Berkeley, Cal., on the brief), for defendants-appellees.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

McKAY, Circuit Judge.

The University of California operates the Los Alamos Scientific Laboratory (LASL), a large research facility in New Mexico, under contract with the Energy Research and Development Administration. In June of 1970, plaintiff Elizabeth Hansbury was laid off by LASL as part of a reduction in force. At that time Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, contained a specific exemption for state agencies, including LASL, as well as for the United States.[1] Nonetheless, Hansbury filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging discrimination on the basis of sex in her layoff, as well as in the layoff scheme generally. In November of 1972, following a delay of exceptional duration, the EEOC dismissed Hansbury's 1970 charge on the ground that it lacked jurisdiction at the time the charge was filed. Nine days later Hansbury filed a new charge with the EEOC. Earlier in 1972, Title VII had been made applicable to LASL.[2] The second complaint was timely filed for any charges arising within the preceding 180 days.[3] The second complaint filed with the EEOC alleged the following:

> I was *laid off* from my job on March 18, 1970, males with less seniority and qualification have been retained. I have not

---

1. Section 701(b) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b) was amended by Pub.L. No. 92–261, § 2(2), 86 Stat. 103 (1972), to include state and local governments within the definition of "employer." As originally enacted, the section excluded these entities from coverage. Pub.L. No. 88–352, tit. VII, § 701(b), 78 Stat. 253 (1964).

2. *See* note 1, *supra.*

3. In 1972 Congress extended the time for filing with the EEOC in such cases from 90 to 180 days after the occurrence of the alleged unlawful employment practice, and from 210 to 300 days where the aggrieved party first instituted proceedings with a state or local agency. 42 U.S.C. § 2000e–5(e) (1976), as amended by Pub.L. No. 92–261, § 4(a), 86 Stat. 104 (1972).

been *recalled*, yet males with less qualifications have been hired. I believe that lay offs of females and hiring of males is *a continuing violation* because of my sex (female). I believe females as a group are discriminated against in lay offs and hiring because of their sex. Further, I believe that females are discriminated against as a class in promotions, opportunities for training and in other terms and conditions of employment because of sex. I believe the above allegations are of a *continuing nature* and discriminated [sic] against me and other females as a group because of sex (Female).

Record, vol. 1, at 18 (emphasis added).

The EEOC made a determination that LASL was guilty of sex discrimination against the class comprised of its women employees. The EEOC further found that Hansbury had not been rehired in retaliation for having filed her initial EEOC complaint in 1970.[4] The Department of Justice issued a notice of right to sue on April 1, 1976, some three and one-half years after Hansbury had lodged her second EEOC complaint. Within the statutory ninety days after the notice was given,[5] this suit was commenced. Hansbury named the Regents of the University of California, the governing body of LASL, as defendants under Title VII and Harold Agnew, LASL's director,[6] as a defendant under 42 U.S.C. § 1983 (1976). The complaint alleged a class action on behalf on Hansbury and other women similarly situated. In addition to realleging the charges in her 1972 EEOC complaint by reference, Hansbury alleged, among other things:

17. Defendants intentionally have engaged and *continue* to intentionally engage in unlawful employment practices and policies at LASL. Such practices and policies include, but are not limited to, the following:

.    .    .    .    .

B. Failing to *recruit* and *hire* females because of their sex;

.    .    .    .    .

H. Establishing a *hiring, promotional* and seniority system which has the effect of *continuing* and preserving the Defendants' policies, practices, customs and usages of limiting the employment and promotional opportunities of female employees because of their sex; and

I. Failing and refusing to take such affirmative action as will correct the effects of the discriminatory policies and practices complained of herein.

Record, vol. 1, at 11–12 (emphasis added).

In the course of the proceedings below, the trial court permitted discovery with reference to the question of certifying the class but apparently confined discovery to that issue. The court did not determine, pursuant to Rule 23(c)(1), Fed.R.Civ.P., whether the action could be maintained as a class action. On March 3, 1977, the trial court granted the defendants' motion to dismiss.[7] This appeal followed.

---

4. This determination was not made a part of the record. Our characterization of its findings is based on discussion in appellant's brief, which is not refuted by LASL.

5. 42 U.S.C. § 2000e–5(f)(1) (1976).

6. Agnew was appointed to this post some two months after Hansbury's layoff.

7. The court's order, in its entirety, reads:
     The Motion of the defendants to dismiss the complaint of plaintiff Elizabeth Hansbury in Cause No. 76–368–B, *Hansbury v. Regents of the University of California, et al.* having come on for consideration, and it having been concluded that *42 U.S.C.A. § 2000e* did not apply to the defendants at the time plaintiff's claim arose; that her attempt to sue pursuant to *42 U.S.C.A. § 1983* must fail on the bases that the Regents of the University of California is not a person within Section 1983, that the defendant Agnew was not the director of the Los Alamos Scientific Laboratory at the time the plaintiff's claim arose, and on the further ground that the applicable state statute of limitations, *N.M.Stat.Ann. § 23–1–4* (1953), has run; and no other jurisdictional bases being stated in the complaint; Now, Therefore,
     IT IS BY THE COURT ORDERED that the Motion of the defendants to dismiss as against plaintiff Elizabeth Hansbury be, and it hereby is, granted, and Cause No. 76–368–B is dismissed.
Record, vol. 1, at 314–15.

## TITLE VII

■ Since the acts of LASL prior to March 1972, however discriminatory they may have been, could not have constituted violations of Title VII,[8] the trial court had jurisdiction over the Title VII portion of the complaint only if there was a sufficient allegation of violation arising after March 24, 1972, the date upon which LASL became subject to Title VII. A claim of discrimination in the 1970 layoff itself is obviously not in this category. Its dismissal was therefore proper.

While it is clear from the record in this case that Hansbury's principal theory from the beginning, and at least until the filing of this appeal, was that LASL was covered under Title VII at the time of her layoff,[9] it is also clear that she fully apprised the trial court that she was additionally claiming to be a victim of continuing violations which allegedly occurred subsequent to March 1972 as well as before. This claim is premised on theories of discriminatory application of LASL rehire or recall policy and discriminatory refusal to hire plaintiff anew after the layoff. These theories are reflected in paragraph 17 of Hansbury's district court complaint, as well as in her 1972 EEOC complaint, which her court complaint incorporated by reference. The trial court's order of dismissal, however, made no reference to these theories of continuing violation; it appears to have expressly treated only the claim growing out of the actual layoff.[10]

■ Although the trial court did not deal with the continuing violation claim in its order granting defendants' motion to dismiss, the defendants nonetheless argue that dismissal of that claim was also proper since Hansbury's complaint did not ade-

quately allege a violation occurring after March 1972. We have decided otherwise. In any event, defendants argue, the motion became one for summary judgment under Rule 56, Fed.R.Civ.P., when the court accepted matters outside the pleadings. *See* Fed.R.Civ.P. 12(b). The defendants contend that the moving papers revealed no factual dispute concerning the absence of post-layoff continuing violations since their affidavits asserting that LASL had no rehire provisions went unanswered. Defendants believe summary judgment was therefore properly awarded them.

The assertion that the motion became one for summary judgment is problematic. There is no question that if, on a motion to dismiss for failure to state a claim, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b). However, it does not appear that the steps necessary to convert the motion into one for summary judgment were taken, nor even that the trial court intended to grant summary judgment rather than a motion to dismiss. First, defendants' motion, to which defendants' affidavits[11] were appended, purported only to be a motion to dismiss under Rule 12(b) "upon the grounds that the complaint fails to state a cause of action and/or that this Court does not have jurisdiction over said complaint." Record, vol. 1, at 44. Second, defendants do not appear subsequently to have asked the court to treat their motion to dismiss as a motion for summary judgment, nor did the trial court indicate its intention to do so. *See Franklin v. Oklahoma City Abstract & Title Co.*, 584 F.2d 964, 967 (10th Cir. 1978). Third, the judge's

---

8.  *See* note 1 and accompanying text, *supra.*

9.  Hansbury's chief argument in this regard was that LASL was outside the scope of the exemption for state governments that existed prior to the 1972 amendment, *see* note 1, *supra,* and was therefore not exempt from Title VII requirements applicable at the time of her 1970 layoff. Hansbury has not pressed this argument on appeal. She alleges as error only the dismissal of her claim of continuing discrimina-

tion occurring after adoption of the 1972 amendment, which made LASL clearly subject to Title VII.

10.  *See* note 7, *supra.*

11.  The two affidavits to which defendants would have us attach controlling significance are conclusory in nature, and the text of each does not exceed a single page.

order only purports to rule on a motion to dismiss the complaint, not a motion for summary judgment. *See* note 7. Fourth, the stated grounds for dismissal are all in the nature of jurisdictional defects largely discernible from the pleadings themselves.[12]

We have recently reaffirmed our rule that a trial court commits error if it treats a 12(b) motion as a motion for summary judgment without some indication to the parties that it is doing so. *Franklin v. Oklahoma City Abstract & Title Co.*, 584 F.2d at 967. Since accepting the defendants' theory that the trial court decided the motion as one for summary judgment would require us to conclude that the court proceeded in contravention of this rule, we reject that characterization of the proceeding below. Given the long-standing judicial hesitation to grant summary judgment in all but the clearest cases, it should come as no surprise that we would conclude that a motion for summary judgment had not been made or ruled on, where neither the parties' nor the trial court's conduct comports with that conclusion.[13] The motion was and remained a motion to dismiss under Rule 12(b). We evaluate it as such and decide that plaintiff adequately alleged a claim of post-layoff employment discrimination occurring after Title VII became applicable to LASL. Dismissal of this claim, either for lack of jurisdiction or failure to state a claim, was therefore not proper.

■ Plaintiff's claim of post-layoff continuing discrimination, as mentioned earlier, is two-pronged. She alleged LASL applied its recall or rehire policy in a discriminatory manner. If this were true, and if such discrimination occurred within 180 days of the filing of her second EEOC complaint, plaintiff would be entitled to Title VII relief. She also argues that even if there was no such policy she was discriminatorily refused new employment after the effective date of the 1972 amendment making Title VII applicable to LASL. The difficulty with this second theory lies in the fact that plaintiff's last formal application for employment was filed in 1970 and that her last inquiry of any sort, made indirectly through a new employer, was made in 1971. These events occurred before the 1972 amendment made Title VII applicable to LASL and well before the 180-day period preceding the filing of the second EEOC complaint. Her theory is apparently based on the doctrine of "futility," for she makes much of indications by LASL personnel that she simply would not be considered again for employment at LASL. Under this doctrine, plaintiff need not file applications in order to have standing to assert a Title VII claim, if doing so would be futile. *See Macklin v. Spector Freight Systems, Inc.*, 156 U.S.App. D.C. 69, 78, 478 F.2d 979, 988 (1973); *Boudreaux v. Baton Rouge Marine Contracting Co.*, 437 F.2d 1011, 1014–16 (5th Cir. 1971). *See also Jones v. Lee Way Motor Freight*, 431 F.2d 245, 247 (10th Cir. 1970), *cert. denied*, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237 (1971). Such a claim would be timely filed, the argument runs, even if no employment application had been filed in the preceding 180 days, so long as during that period it would have been futile to make such an application. Plaintiff's theory is not without difficulty, for none of the cases just cited involves application of the

---

12. Indeed, the trial court's dismissal appears to have been based only on jurisdictional grounds rather than for failure to state a claim. *See* note 7, *supra*. A reasonable inference is that the trial court was considering only the motion to dismiss for lack of jurisdiction and not defendants' alternate motion to dismiss for failure to state a claim. A motion to dismiss for lack of jurisdiction, unlike a motion to dismiss for failure to state a claim, is not subject to Rule 12(b)'s provision that acceptance of "matters outside the pleading" means the motion shall be treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b).

13. We note that a motion for summary judgment on the merits would have been premature and if made, prematurely considered, until such time as plaintiff had had ample opportunity to conduct meaningful discovery relating to her substantive claim. *See Perry v. Sindermann*, 408 U.S. 593, 598, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The reason for this is clear. As in any discrimination case, evidence bearing on discriminatory employment practices committed by defendants is largely in the hands of the defendants themselves. Only through adequate discovery will this evidence become available to plaintiff.

futility doctrine to situations where the futility arose before the employer's refusal to hire was made illegal under Title VII, nor are we cited to such a case. We believe, however, that if after proper discovery plaintiff could show that the defendants were aware of her continuing desire to be considered for employment at LASL, this showing could constitute the functional equivalent of an application. If the requisite awareness of plaintiff's desire to be hired continued beyond adoption of the 1972 amendment and to within 180 days of her second EEOC filing, plaintiff would be entitled to relief under her complaint as filed if able to prove her claim of discrimination in LASL's alleged refusal to consider fairly her "application" for employment.

Damages, if any, arising under either of these theories of post-layoff discrimination would of course be limited to the post-March 24, 1972 period.

### SECTION 1983

■ Plaintiff's claims under 42 U.S.C. § 1983 (1976) are directed to the defendant Agnew.[14] We note that unlike Title VII, Section 1983, if applicable at all, was applicable on the date of plaintiff's termination in 1970 as well as at subsequent times. However, the trial court's conclusion that the four year limit of N.M.Stat.Ann. § 23–1–4 (1953) was the applicable statute of limitations is correct.[15] The Section 1983 claim, to the extent that it was based on the layoff itself, was thus properly dismissed as untimely.

■ As with the Title VII claims against LASL, however, plaintiff's complaint, properly construed, alleges that Agnew discriminatorily denied plaintiff recall rights and discriminatorily refused to rehire or hire her following the layoff. It follows that if plaintiff is able to show there was a recall system at LASL and that defendant Agnew refused to implement the system in favor of plaintiff because of her sex, she will have established a claim under Section 1983 if Agnew so acted within the four-year period preceding the filing of her complaint in the district court.[16] The same is true as to plaintiff's allegations of discriminatory refusal to hire her, subject to the significant hurdle plaintiff must cross relating to the "futility" doctrine, as set out in our discussion of the Title VII action.[17]

14. Hansbury admits that the Regents of the University of California are not a "person" subject to suit under Section 1983. Appellant's Brief at 22.

15. Congress has not specified a limitations period applicable to actions brought under Section 1983. The most nearly analogous state period of limitations is applied. *United Auto., Aerospace & Agricultural Implement Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *O'Sullivan v. Felix*, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914). That statute here is N.M.Stat.Ann. § 23–1–4 (1953), presently codified as N.M.Stat. Ann. § 37–1–4 (1978). It provides that actions
> founded upon accounts and unwritten contracts; those brought for injuries to property or for the conversion of personal property or for relief upon the ground of fraud, and all other actions not herein otherwise provided for and specified [must be brought] within four years.

16. Agnew, of course, may have some defense available to him, such as the "good faith" defense recognized as a part of the qualified immunity from damages liability enjoyed by state officials in civil rights actions. *See Imbler v. Pachtman*, 424 U.S. 409, 418–19, 96 S.Ct. 984,

47 L.Ed.2d 128 (1976); *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Of course, the demonstration of "good faith" does not foreclose injunctive relief.

Similarly, the Eleventh Amendment bars imposition of a liability which must be paid from public funds in the state treasury. *Quern v. Jordan*, —— U.S. ——, ——, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). On the other hand, the Eleventh Amendment is no bar to imposition of prospective injunctive relief, "even though such an injunction has an ancillary effect on the state treasury." *Quern v. Jordan*, —— U.S. at ——, 99 S.Ct. at 1143. *See Edelman v. Jordan*, 415 U.S. at 667–68, 94 S.Ct. 1347; *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

17. Plaintiff argues that the filing of her EEOC complaints in 1970 and 1972 should be considered as tolling the statute of limitations applicable to her Section 1983 action, the result being that discriminatory acts perpetrated by Agnew earlier than the four years immediately preceding the filing of the district court complaint would also be actionable in the instant

SUMMARY OF DISPOSITION

In view of the complexity of the law applicable to this case, and the consequent intricacy of much of the analysis in our opinion, a concise summary of our disposition may prove useful.

The trial court properly dismissed the complaint, as against both LASL and Agnew, insofar as it is based on plaintiff's layoff. Title VII was not then applicable to LASL; the Section 1983 action was not timely filed as to that claim.

The claims of post-layoff "continuing" discrimination under Title VII were properly dismissed insofar as they involved conduct occurring prior to March 24, 1972, or prior to the 180 day period preceding the filing of the second EEOC complaint. The claims of post-layoff "continuing" discrimination under Section 1983 were properly dismissed insofar as they involved acts occurring prior to the four year period preceding the filing of the complaint in the district court.

On the other hand, for the reasons previously outlined, it was error to dismiss the claims of post-layoff "continuing" discrimination insofar as they involved acts occurring within 180 days of the filing of the second EEOC complaint, in the case of the Title VII claim against LASL, and within four years of the filing of the district court complaint, in the case of the Section 1983 claim against Agnew.

We will not speculate on whether plaintiff, after proper discovery, can resist a motion for summary judgment based on the theories left available to her by this opinion. If she can, the question of class certification is still open for consideration by the trial court.

The case is affirmed in part, reversed in part, and remanded for such further proceedings as are consistent with the views expressed in this opinion.

proceeding. We must reject this argument. While perhaps leaving some room for gymnastic distinctions, we believe *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), although involving Section 1981 of Title 42 rather than Section 1983, puts to rest questions of whether such actions are

limited by any requirement to exhaust Title VII remedies and whether applicable statutes of limitation are tolled pending Title VII administrative proceedings. Each question is answered in the negative by that decision. *See id.* at 460, 465–67, 95 S.Ct. 1716.