Ernest E. CLULOW, Jr.,
Plaintiff-Appellant,

v.

STATE OF OKLAHOMA; Dr. Joe E. Tyler; Dave Faulkner, Sheriff, Tulsa County, Oklahoma; Oklahoma Bar Association; Stuart B. Strasner, Executive Director; Bill Boswell, General Counsel; William H. Bell, Former President; John M. Luttrell, President; Deryl Lee Gotcher, Former President, and Paul M. Vassar, Former General Counsel, O.B.A.: Kenneth Spears, Former Sheriff, Jackson County, Oklahoma; Finis Smith; Kenneth Wallace; Unknown Members of Board of Mental Health, back to August 1, 1978; Unknown Present Superintendent of State Hospital at Fort Supply; Larry Derryberry, Former Attorney General of Oklahoma, Defendants-Appellees.

No. 80–1258.

United States Court of Appeals,
Tenth Circuit.

Feb. 22, 1983.

Ernest E. Clulow, Jr., pro se (Charles A. Whitebrook and Robert Lee Blackwood, Tulsa, Okl., on brief), for plaintiff-appellant.

Bob R. Scarbrough, Altus, Okl., for defendant-appellee Kenneth Spears.

S.M. Fallis, Jr., Dist. Atty., Tulsa, Okl. (Andrew B. Allen and James F. Raymond, Asst. Dist. Attys., Tulsa, Okl., on brief), for defendant-appellee Dave Faulkner, Sheriff of Tulsa, Okl.

Doyle M. Argo, Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, Okl. (James M. Sturdivant and Sidney G. Dunagan of Gable, Gotwals, Rubin, Fox, Johnson & Baker, Tulsa, Okl., on brief), for defendant-appellee Oklahoma Bar Ass'n and its present and former officers.

Finis Smith, defendant-appellee, pro se.

Jan Eric Cartwright, Atty. Gen. of Okla., Oklahoma City, Okl. (Stephen F. Shanbour, Asst. Atty. Gen., Oklahoma City, Okl., on brief), for defendants-appellees State of Okl., Dr. Joe E. Tyler, and Larry Derryberry, former Atty. Gen.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

This is an appeal from an order of the District Court dismissing all counts of plaintiff-appellant Clulow's amended complaint.[1] Plaintiff Clulow generally alleges that his several involuntary commitments to mental institutions violated his due process rights and that his suspension in 1962 from the Oklahoma Bar Association similarly was wrongful because of alleged due process violations. Clulow further alleges that the defendants, who are various present and former state and Oklahoma Bar Association officers, and other defendants, conspired against him throughout the period covered in his complaint, *i.e.*, from 1960 through 1978.

Clulow asserts that the action is brought under 42 U.S.C. §§ 1983 and 1985 and 28 U.S.C. § 2201. The district court presumably had jurisdiction under 28 U.S.C. § 1343 since all claims for relief revolve around alleged deprivations of civil rights. Relief is sought in the form of money damages, declaratory judgments and a writ of mandamus against the Oklahoma Bar Association. The amended complaint is in six counts, which now will be set forth in more detail as a backdrop for our discussion.

I

Count One of the amended complaint alleges that in 1960 Clulow was involuntarily committed to the Veterans' Administration Hospital in Oklahoma City by the Tulsa County Court. Clulow alleges various procedural infirmities in the commitment process: that his notice of the hearing was inadequate; that the Sanity Commission lacked the required "legal member"; that he was not advised of his right to remain silent or of his right to counsel; that he was not allowed to make a telephone call during his detention before the hearing; that he was not allowed to see the complaint, the report of the Sanity Commission, or the commitment order; that the complaint was unsworn; and that witnesses were not

---

1. After the appeal was first noticed, this court determined that a jurisdictional defect was present. We concluded that the order of dismissal was not a final decision under 28 U.S.C. § 1291 because a motion filed by some of the defendants to tax attorneys' fees as costs had not been determined. (We note that outstanding motions for fee awards are no longer to be considered as affecting the finality and appealability of decisions on the merits. *Cox v. Flood,* 683 F.2d 330 (10th Cir.1982).) This court on its own motion remanded in part for resolution of this matter. The district court entered an order denying the motion for attorneys' fees on March 12, 1982. Clulow then filed a new notice of appeal on April 5, 1982. No appeal has been taken by any of the defendants from the order denying attorneys' fees.

sworn and were examined outside of his presence, thus affording no opportunity to confront and cross-examine the witnesses. Clulow further maintains that the state court lacked the power to commit him to the federal facility. The prayer is for declaratory judgments holding that the 1960 commitment was illegal, null and void, etc., and further setting forth in general the procedural due process requirements for involuntary commitments to mental institutions.

In the second count plaintiff alleges that he was unlawfully committed in 1961. In this count he alleges that his private psychiatrist, defendant Dr. Joe E. Tyler, initially caused him to be detained by telephoning defendant Kenneth Spears, then Sheriff of Jackson County. Clulow was allegedly held in jail without cause for four days, then taken to the Oklahoma City V.A. Hospital where he was "coerced" into voluntarily admitting himself because the deputy sheriff would not release him from custody otherwise. The next day Clulow was taken to Oklahoma County District Court and committed to the V.A. Hospital. Clulow alleges again that the commitment proceedings violated due process in several particulars. On this count he seeks money judgments against Kenneth Spears ($100,000 in damages plus costs and attorney's fees) for false arrest, false imprisonment, and kidnapping, and against Dr. Tyler ($450,000 actual damages, $100,000 punitive damages, plus costs and attorney's fees).

Count Three deals with Clulow's involuntary commitment in 1966 in Tulsa County. Clulow again alleges that Dr. Tyler "caused" the initiation of proceedings; in this instance a petition for commitment was filed by Clulow's daughter. Due process violations are alleged once again, basically consisting of failure to allow contact with an attorney and failure to advise plaintiff of his rights; in this instance plaintiff further complains that the Sanity Commission

was "illegally constituted" because his own physician, Dr. Tyler, served thereon. Clulow alleges that he demanded a jury trial at court and that a compromise was arranged with Dr. Tyler and defendant Finis Smith, the latter being the attorney on the Sanity Commission. Under this agreement Clulow dropped his demand for jury trial and "agreed" to be committed to St. John's Hospital in Tulsa for up to six weeks. Clulow alleges, however, that two weeks later he was transferred by deputy sheriffs against his will to the V.A. Hospital in North Little Rock, Arkansas. Clulow alleges that this transfer was "without court permission or knowledge or approval" and violated unspecified constitutional rights. Further, he alleges that the transfer was the work of a conspiracy among Dr. Tyler, defendant Kenneth Wallace (an administrator at St. John's Hospital),[2] defendant Sheriff Dave Faulkner, John Lovejoy (a V.A. "contact officer," not a party to this action), and defendant Finis Smith. Clulow prays for judgment, first against Tyler, Smith and Wallace for $200,000, and second against Faulkner for $100,000 plus costs and attorney's fees against these four defendants.

In the fourth count Clulow seeks only declaratory judgments. He alleges that in 1972 another commitment proceeding was initiated against him in Tulsa. Although he had contacted his attorney when the petition was first filed, he was interviewed by the Sanity Commission in Hillcrest Hospital, where he apparently had been under treatment as a voluntary patient, without prior notice and so without having counsel present. Clulow persisted in his demands for a jury trial this time, and was eventually released when the jury found in his favor. However, he complains that he was locked in solitary confinement in the Tulsa County Jail for four hours just prior to the trial. Clulow contends that such incarceration of persons not charged with any crime violates due process and equal protection

---

**2.** After Wallace had successfully moved to quash service of process, Clulow attempted to obtain service of an alias summons. Wallace again moved to quash purported service, II R. 375, but the record on appeal does not show

that any ruling issued on this second motion. However, Clulow notified the trial court that he did not oppose this motion, II R. 449, and he does not treat Wallace as a party to this appeal in his briefs.

and "constitutes false arrest and false imprisonment." The declaratory relief sought includes these judgments: that an "accused mentally ill person" should be advised of specific constitutional rights prior to a commitment hearing, including the right to written notice a reasonable time prior to the proceedings, the right to remain silent, the right to counsel, and the right to be presumed to be sane, thus placing the burden of proof on the state; that evidence of prior mental illness of an "accused" or of any relative is inadmissible in a sanity hearing; and that the spouse of the defendant cannot be a state's witness in a sanity hearing.

Clulow's suspension from practice by the Oklahoma Bar Association is the focus of Count Five of the amended complaint. This suspension, which has never been lifted, occurred against the background of yet another involuntary commitment for psychiatric treatment. Clulow was committed in Virginia in December 1961. In 1962 the Oklahoma Bar Association, acting pursuant to the rules promulgated by the Oklahoma Supreme Court, suspended Clulow from practice because of the Virginia commitment. (Clulow had been suspended two times prior to 1962 but had been reinstated after each of those suspensions.) Clulow alleges that he was not notified of this suspension at the time and did not learn certain details of the process until 1974. Clulow attacks the entire process of attorney discipline that existed in 1962, particularly alleging that attorneys were summarily suspended upon their commitment to mental institutions with none of the due process protections that were afforded to attorneys accused of misconduct. He argues that the Oklahoma Supreme Court could not delegate its authority in such matters to the Bar Association. He alleges that the rule under which he was suspended wrongfully equated a commitment for treatment with a judicial finding of incompetence and so allowed the Bar Association to presume his incompetency from the fact that he had been committed. He complains that in response to his unsuccessful efforts to be reinstated, the O.B.A. officials have refused access to their files and refused to divulge "any details of their requirements for reinstatement."

Further, Clulow alleges that the current rules make reinstatement more difficult and, as applied to him, are "Ex Post Facto Rules." The suspension and other acts of the O.B.A. and its various named officials are said to be a continuing tort, depriving plaintiff of due process and equal protection. On this count Clulow seeks declaratory relief, money judgments, and a writ of mandamus. Declaratory relief is sought to establish that the sole power to discipline attorneys is vested in the Oklahoma Supreme Court and cannot be delegated to the Bar Association, and that suspended attorneys seeking reinstatement cannot be required to meet conditions more strict than those that were in force at the time of their suspension. Damages of $425,000 are sought against the O.B.A. and its various individual officers who are named defendants. Mandamus is sought to compel the Executive Director of the O.B.A. to expunge all records of Clulow's suspension, to reinstate him on the roll of active attorneys, and to give notice of these actions to the Clerk of the Supreme Court of Oklahoma and to the Court Clerk for the Tulsa County District Court.

In Count Six Clulow alleges that all of the acts complained of in the other counts are part of one conspiracy which has existed since 1960 and is still ongoing. One million dollars in damages is prayed for against the State of Oklahoma, former Attorney General Larry Derryberry,[3] Faulkner, Tyler, Smith, the Oklahoma Bar Association and the several named officials of the Association.

---

**3.** Clulow admits that the allegations of the amended complaint are insufficient to state a claim against Derryberry, who is mentioned in the amended complaint only in the prayer for relief in Count Six. Accordingly, Clulow now concedes that Derryberry should be dismissed from the appeal and from the case. Appellant's Brief in Reply to Brief of the State of Oklahoma, et al., pp. 23–24.

## II

At this point it is convenient to summarize the rulings of the district court.

The first four counts of the complaint were dismissed by the court as barred by the statute of limitations. The court first held that the claims sounded in tort so that the two year period provided under 12 Okla. Stat. § 95(3) (1981) was applicable.[4] The court also determined that Clulow had failed to show grounds for tolling of the statute.

Clulow first argued that the running of the statute should be tolled because the defendants had wrongfully refused to provide him with certain pertinent records until 1977. The court determined that the alleged concealment or withholding of records did not prevent plaintiff from knowing of the existence of his claim. The district judge held that only in such instances would tolling occur, citing *Sanders v. United States,* 551 F.2d 458 (D.C.Cir.1977); *Portis v. United States,* 483 F.2d 670 (4th Cir. 1973); and *American Tobacco Co. v. People's Tobacco Co.,* 204 F. 58 (5th Cir.1913).

Clulow also argued that the action was not barred because he had alleged a continuing tort. The court held, however, that the first four counts alleged only "isolated events, the most recent of which was concluded approximately six years before the plaintiff filed his Complaint." As to Counts Five and Six, however, the judge found that the allegations were not time-barred on their face, and so proceeded to consider other defenses raised on those counts.

The fifth count was dismissed for lack of federal jurisdiction. The court found that the claim in Count Five was essentially an attempt to appeal the plaintiff's suspension from the practice of law. Such a matter may be reviewed only by the United States Supreme Court on writ of certiorari, the court held, noting that jurisdiction in lower federal courts had been held to be lacking in *Doe v. Pringle,* 550 F.2d 596 (10th Cir. 1976), *cert. denied,* 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227; and *Gately v. Sutton,* 310 F.2d 107 (10th Cir.1962).[5]

As to Count Six, the district judge held that the conspiracy claim could not withstand the motion to dismiss because it contained only conclusory allegations of a conspiracy without supporting references to material facts. The court relied on *Slotnick v. Staviskey,* 560 F.2d 31 (1st Cir.1977), *cert. denied,* 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783, noting that Clulow had alleged violations of his constitutional rights by various acts of the several alleged conspirators, but had made no averments to show that the defendants acted in concert.

We turn now to the issues which we hold to be dispositive of the appeal.

## III

■ The district court's dismissal of Count Five, in which Clulow sought relief against the Oklahoma Bar Association and its named officials, must be affirmed. Insofar as Clulow sought in this count to be reinstated to active membership in the Association and to have the record of his suspension expunged, the court correctly ruled that it was without subject matter jurisdiction. It is well established that the lower federal courts do not have jurisdiction to review the decisions of a state's highest court in matters relating to discipline or admission to practice of individual attorneys, such review being available only in the United States Supreme Court on writ of certiorari. *Doe v. Pringle,* 550 F.2d 596 (10th Cir.1976), *cert. denied,* 431 U.S. 916, 97

---

**4.** Section 95 generally gives the limitation periods for all actions other than those for recovery of real property. The third subsection provides, *inter alia,* for a two year period for "[a]n action ... for injury to the rights of another, not arising on contract, and not hereinafter enumerated...." We note additionally that the one year period of the fourth subsection is applicable to actions for false imprisonment.

**5.** The court also noted *Mayes v. Honn,* 542 F.2d 822 (10th Cir.1976), in which we upheld the dismissal of a complaint similar to Clulow's, not on jurisdictional grounds but on the similar basis that the action was an attempt to appeal the state court's rulings and was "not a proper civil rights action in form or substance ...."

S.Ct. 2179, 53 L.Ed.2d 227; *Gately v. Sutton,* 310 F.2d 107 (10th Cir.1962).[6]

Clulow seeks to avoid application of this accepted rule by arguing that his case is distinguishable because his suspension was not by the Oklahoma Supreme Court but by the Oklahoma Bar Association. We disagree. Clulow's petitions for reinstatement have been considered and rejected by the Oklahoma Supreme Court. The record includes documentation of this fact, including certified copies, of which we take notice, of Clulow's petition for relief from the order of suspension, II R. 345–348, the Supreme Court's order and amended order denying relief, II R. 351, 353, Clulow's petition for rehearing, II R. 356–358, and the Supreme Court's order of September 30, 1974, denying the same, II R. 362 (all contained in appendices to brief filed in trial court by the O.B.A. defendants). Even if we were to accept his argument that the original act of suspension was not by the court, the subsequent review by the state court insulates the suspension from review in the lower federal courts. This is so because the issue could not be adjudicated without in effect reviewing the Oklahoma Supreme Court's determinations.

On its face Clulow's prayer for declaratory relief under this count appears to be within federal jurisdiction since it challenges the general rules and not their particular application. *See Younger v. Colorado,* 625 F.2d 372 (10th Cir.1980). However, we find that the dismissal of this portion of Count Five was proper for failure to state a meritorious claim. Clulow asks this court to rule that the Oklahoma Supreme Court may not delegate to the Oklahoma Bar Association its power to discipline attorneys. Clearly the court has retained the ultimate power and merely has utilized the O.B.A. as an officer of the court in enforcing its rules regarding suspension and reinstatement of attorneys. 5 Okla.Stat.App. 1–A, Rules 1, 2, 10 and 11 (1981); *see also* note 10, *infra,* for earlier similar provisions.

█ Clulow also seeks a judgment declaring that suspended attorneys seeking reinstatement cannot be required to meet conditions that are more strict than those that were in effect at the time of suspension. We are referred to no authority supporting this contention other than the *ex post facto* prohibition of the Constitution.[7] We do not agree that the Constitution requires such a rule. The Supreme Court has consistently ruled that the *ex post facto* provision applies only to criminal prosecutions. *See e.g., Galvan v. Press,* 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954) (*ex post facto* provision not applicable to deportation statute). Even a statute making it a crime to practice medicine after a former felony conviction has been held lawfully applied to one whose prior felony predated the statute because the state's predominant interest was in prescribing the qualifications for admission to the practice of medicine. *Hawker v. New York,* 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (1898). In *Dent v. West Virginia,* 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889), the Court upheld a licensing statute that disqualified a physician who had been in practice for six years. The Court held the law valid because it "was intended to secure such skill and learning in the profession of medicine that the community might trust with confidence those receiving a license under authority of the State." 129 U.S. at 128, 9 S.Ct. at 235. Thus even if we were to consider Oklahoma's newer reinstatement provisions to be penal, the fact that their primary aim is the protection of the public from those incapable of practicing the profession rather than the punishment of incapacitated attorneys would require us to uphold the Oklahoma rules. *See*

---

**6.** *Cf. Younger v. Colorado,* 625 F.2d 372 (10th Cir.1980) (federal courts do have jurisdiction to hear cases challenging, on due process or equal protection grounds, the adoption or administration of general rules and regulations governing admission to practice or discipline of attorneys); *Mayes v. Honn,* 542 F.2d 822 (10th Cir.

1976) (affirming dismissal of similar action not on jurisdictional grounds per se but because "not a proper civil rights action either in form or in substance and ... palpably lacking in merit").

**7.** U.S. Const. art. I, § 10, cl. 1.

*United States v. Nasser,* 476 F.2d 1111 (7th Cir.1973).[8] Furthermore, procedural changes are not within the scope of the *ex post facto* prohibition unless their effect is "harsh and arbitrary." *Beazell v. Ohio,* 269 U.S. 167, 170–71, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925). Thus as to this *ex post facto* argument, Count Five is defective again for failure to state a meritorious claim.

■ There remains under Count Five the prayer for damages against the O.B.A. and its officials. Our prior decisions have not held that the federal courts' lack of jurisdiction to review attorney disciplinary matters in civil rights actions extends to claims for damages, and we do not decide that question here. Instead, we ground our ruling on our conclusion that the district court was correct in dismissing the claims for damages in Count Five because, on the facts alleged, the defendants are immune from suit on these claims.[9]

In analyzing the immunity issue the first step is to characterize the governmental activity. The Supreme Court has specifically ruled that even informal attorney disciplinary matters presented to the states' highest courts are judicial proceedings. *In re Summers,* 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945). With regard to particular defendants the rule is that immunity depends upon the specific function being performed. *Butz v. Economou,* 438 U.S. 478, 511–12, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978); *G.M. Leasing Corp. v. United States,* 560 F.2d 1011, 1014 (10th Cir.1977),

*cert. denied,* 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516. Once the function has been identified, analysis turns to whether and to what degree governmental immunity historically has been afforded for that function. *Allred v. Svarczkopf,* 573 F.2d 1146 (10th Cir.1978); *McGhee v. Draper,* 564 F.2d 902 (10th Cir.1977).

By this analysis the courts have developed a rule of absolute immunity from suits for damages for prosecutors in their roles of initiating and prosecuting criminal cases. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Martinez v. Chavez,* 574 F.2d 1043 (10th Cir.1978); *Taylor v. Nichols,* 558 F.2d 561 (10th Cir.1977); *Atkins v. Lanning,* 556 F.2d 485 (10th Cir. 1977). Although this rule has been based on policy grounds concerning the need for vigorous enforcement of the criminal law, similar considerations support extending the rule to cover the analogous activities of the O.B.A. defendants in the instant case. We therefore agree with the courts which have held that bar officials charged with the duties of investigating, drawing up, and presenting cases involving attorney discipline enjoy absolute immunity from damage claims for such functions. *See, e.g., Simons v. Bellinger,* 643 F.2d 774 (D.C.Cir. 1980); *Kissell v. Breskow,* 579 F.2d 425 (7th Cir.1978); *Ginger v. Wayne County Circuit Court,* 372 F.2d 621 (6th Cir.1967), *cert. denied,* 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 998; *Clark v. Washington,* 366 F.2d 678 (9th Cir.1966), *cert. denied,* 375 U.S. 986, 84 S.Ct. 519, 11 L.Ed.2d 473.[10]

---

**8.** In *Nasser* the defendant, formerly an attorney with the I.R.S., had been convicted under a conflict of interest statute that, *inter alia,* made it a crime for a former government attorney to represent a client in a matter in which the attorney had personally participated while in government service. The defendant alleged the statute was an *ex post facto* law because it was more restrictive than the statute that had been in effect when he began his I.R.S. employment. The court held that "where there is a sufficiently rational relationship between the past activity and the public interest in excluding unworthy people, the disqualification is not a punishment and a law newly imposing it is not an *ex post facto* law." 476 F.2d at 1117 (citations omitted).

**9.** Although the district court dismissed Count Five in its entirety on jurisdictional grounds, we note that the O.B.A. defendants also raised the defense of immunity below. *See* the alternative Motion To Dismiss or For Summary Judgment of O.B.A. defendants, II R. 312.

**10.** The rules of the Supreme Court of Oklahoma have long conferred on the Oklahoma Bar Association the governmental function of investigating and reporting to the Court on the suspension of attorneys from practice by reason of their incompetency. 5 Okla.Stat.App. 1, Article XI (1971).

The rules in effect at the time of Clulow's suspension did grant broader authority to the Executive Secretary and Executive Council. Thus the rules for reinstatement in effect at

Accordingly the trial court's dismissal of Count Five in its entirety must be affirmed.[11]

## IV

Clulow admits candidly that the trial court's dismissal of Counts One through Four, based on the two year limitation period of 12 Okla.Stat. § 95(3) (1981), was correct, absent a tolling or other avoidance of the statute. Appellant's Brief at 10; Appellant's Brief in Reply to Brief of Appellee Faulkner at 7. We are persuaded that the district court properly held that the two-year statute applied and that Clulow had failed to show grounds to prevent the barring of these tort claims.

### A.

■ Congress did not prescribe limitations periods for the Civil Rights Acts. In the absence of such Congressional direction the federal courts apply the most closely analogous state period of limitation. This rule has been uniformly followed in civil rights cases, beginning with *O'Sullivan v. Felix*, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914), and has often been so applied by this court. *See e.g., Childers v. Indep. School Dist. No. 1*, 676 F.2d 1338, 1342–43 (10th Cir.1982); *Shah v. Halliburton Co.*, 627 F.2d 1055, 1057–59 (10th Cir.1980) (ac-

tion under 42 U.S.C. § 1981); *Spiegel v. School Dist. No. 1*, 600 F.2d 264 (10th Cir. 1979); *Hansbury v. Regents of University*, 596 F.2d 944 (10th Cir.1979). Therefore we turn to the Oklahoma statutes of limitations.

■ The district court concluded that since the claims sound in tort, the appropriate Oklahoma prescriptive period was that provided by 12 Okla.Stat. § 95(3), which, *inter alia*, governs actions "for injury to the rights of another, not arising on contract, and not hereinafter enumerated . . . ." We agree. In *Zuniga v. AMFAC Foods, Inc.*, 580 F.2d 380, 383–84 (10th Cir.1978), a § 1981 case, we held that the proper mode of analysis begins with characterizing the facts underlying the plaintiff's claim and determining if there is a comparable action under state law. Following this approach we conclude that the plaintiff's claims correspond to tort actions for interference with individual rights. The only Oklahoma statutory provisions that could apply then are the third and fourth subsections of § 95. The fourth subsection provides, *inter alia*, for a one year prescriptive period for certain torts, namely libel, slander, assault, battery, malicious prosecution, and false imprisonment. Although it could be argued that Clulow's claims are in part similar to a false imprisonment action, we agree with

that time appear to have given the Executive Council the final authority to reinstate a suspended attorney. 5 Okla.Stat. Ch. 1, App. 1, Art. II, § 6(b) (1961). We do not concern ourselves with those rules. Insofar as Clulow seeks declaratory relief as to appropriate standards and procedures for dealing with incapacitated attorneys the former rules are irrelevant; any attempt to seek a judgment approving or disapproving those rules would be moot and not a case or controversy within federal jurisdiction. In dealing with Clulow's claims for damages, the O.B.A. defendants would not be liable for actions taken under these rules (apparently in effect only until 1966, see Brief of Bar Association Appellees at 13–14) because of limitations.

We note also that the Rules of the Oklahoma Supreme Court have provided for the immunity of the Bar Association, its officers and committee members for any "damages incident to investigations, complaints and proceedings concerning Association members." *See* 5 Okla. Stat.App. 1, Article XII. Our basis for the

holding of immunity of the Association and its officers from liability on these federal civil rights claims is not grounded on this rule promulgated by the Oklahoma Supreme Court; instead our immunity ruling is grounded on the federal case law cited.

11. Clulow asserts that all defendants are sued in both their official and individual capacities. I R. 240. The immunity that we have held applicable to the O.B.A. defendants shields them from suit in their individual capacities. In their official capacities with respect to the handling of admissions, suspensions, etc., the O.B.A. acts as an arm of the state, as we have previously discussed. Therefore, a claim for damages against them in their official capacities is barred by the Eleventh Amendment insofar as satisfaction of the claim might be sought from state funds. *Harris v. Tooele County School District*, 471 F.2d 218, 220; (10th Cir. 1973); *Williams v. Eaton*, 443 F.2d 422, 428–29 (10th Cir.1971).

the application of the two year period of the third subsection of § 95. This two year period has been held appropriate in other § 1983 actions. *Crosswhite v. Brown,* 424 F.2d 495 (10th Cir.1970); *Burgess v. Bryant,* 505 F.Supp. 19 (W.D.Okl.1980); *Seibert v. McCracken,* 387 F.Supp. 275 (E.D.Okl.1974); *see also Person v. St. Louis-S.F. Ry.,* 428 F.Supp. 1148 (W.D.Okl.1976) (applying same statute to action under 42 U.S.C. § 1981).[12] This choice is further supported by the fact that most of plaintiff's claims can be characterized as specific torts such as false imprisonment only by rather loose analogy. The more general tort of interference with individual rights covered by § 95(3) is a better analogue. Thus we are persuaded that the two year statute applies to bar Clulow's claims in Counts One through Four unless Clulow's theory on tolling or other avoidance of the limitation applies.

### B.

Clulow has urged three grounds for avoiding the bar of the limitations period: (1) that his claims involve continuing torts; (2) that defendants withheld records from him and are still withholding some records, thus preventing him from being able to ascertain, for some years, all of the deprivations he actually had suffered; and (3) that he has stated equitable causes of action so that only laches should bar his suit.

■ The district court rejected Clulow's contention that continuing torts had been pleaded, characterizing the allegations of the first four counts as isolated events. We agree. Clulow's argument that the events were connected because of the similarity of the alleged due process violations is simply insufficient on its face. Likewise, the argument that the events are related because of the use at each commitment proceeding of evidence of the prior commitments is unavailing. We express no opinion on the propriety of these alleged evidentiary rulings.

In any event neither any single alleged practice nor all of them together are sufficient to unite, into one continuing tort, events that were clearly discrete and separated by as much as twelve years. There was no averment in Counts One through Four of a continuing violation of a continuing duty, extending into the two-year period preceding the filing of this action on August 17, 1978. *Big Four Foundry Co. v. Hagers,* 197 Okl. 409, 172 P.2d 322 (Okl. 1946); *cf. Western Natural Gas Co. v. Cities Service Gas Co.,* 507 P.2d 1236, 1242 (Okl. 1972), *appeal dismissed and cert. denied,* 409 U.S. 1052, 93 S.Ct. 559, 34 L.Ed.2d 506, and cases there cited.

Clulow also argued in the district court that the running of the statute should be tolled because of alleged withholding of information. The judge found that Clulow did not argue that the alleged lack of information prevented him from knowing that he had a claim or claims. II R. 461. We agree that Clulow has failed to assert a sufficient claim of lack of information to avoid the bar of limitations.

■ We view this question as one of accrual of the claim, but whether it is one of accrual or tolling, it is to be determined by reference to state law. State law on tolling of the statute of limitations should be followed unless that law is inconsistent with federal law or with the policy which the federal law seeks to implement. *Board of Regents v. Tomanio,* 446 U.S. 478, 484–86, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980). As the Supreme Court explained in *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), state law on tolling is applicable because

> [i]n borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the state's wisdom in setting a limit, *and exceptions thereto,* on the prosecution of a closely analogous claim.

---

12. We do not consider the two year limitation period to be so unreasonably short as to defeat federal policy. *Cf. Childers v. Indep. School Dist. No. 1,* 676 F.2d 1338, 1342–43 (10th Cir. 1982) (rejects application of six month limita-

tion in Oklahoma's Political Subdivision Tort Claims Act as "inconsistent with the broad remedial purposes of the federal civil rights acts").

421 U.S. at 464, 95 S.Ct. at 1722 (emphasis added).

■ In the instant case we find no basis for suspending accrual of the claim or for tolling the two-year limitation provided by state law, nor do we perceive any conflict with federal law or policy in applying the Oklahoma limitation. Rather, we feel that the district judge correctly ruled that, under either Oklahoma or federal law, Clulow would have to show a concealment of facts that would prevent him from knowing that he had a cause of action. We conclude that Clulow failed to allege any facts which would constitute such a concealment.

That Oklahoma law requires that plaintiffs show concealment of the *existence* of a cause of action is illustrated by *Morris v. Wise*, 293 P.2d 547, 55 A.L.R.2d 1033 (Okl. 1955). In *Morris* the plaintiff was injured in an automobile collision. The vehicle that struck the plaintiff's car was occupied by the two defendants who both denied being the driver. The Oklahoma court held that the defendants' refusal to divulge the identity of the driver did not toll the running of the limitation period because "there was no concealment of the cause of action. There was nothing necessary to establish a cause of action that could have been discovered later except who was the driver of the vehicle involved." 293 P.2d at 550. *Morris* clearly establishes that the rule applied by the district judge here is correct under Oklahoma law. *Accord, United Fidelity Life Insur. Co. v. Law Firm*, 624 F.2d 145 (10th Cir.1980) (applying Oklahoma law); *Olansen v. Texaco, Inc.*, 587 P.2d 976, 985 (Okl.1978); *Martie v. Martie*, 271 P.2d 385 (Okl.1954); *Kansas City Life Insurance Co. v. Nipper*, 174 Okl. 634, 51 P.2d 741 (Okl. 1935).

Here there is no conflict with federal law because our decisions on accrual in cases arising in other areas of federal law show that the basic concealment rule is the same. *See, e.g., King & King Enterprises v. Champlin Petroleum Co.*, 657 F.2d 1147, 1154–56 (10th Cir.1981) (antitrust), *cert. denied*, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320; *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687, 691–94 (10th Cir.1981) (securities fraud), *cert. denied*, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209. This general rule has been followed by other circuits as well. For example, in *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248 (9th Cir.1978), an antitrust case, the court held that to have the statute tolled on the basis of the defendants' alleged fraudulent concealment of the existence of the claim, the plaintiff would have to show "that he had neither actual nor constructive knowledge of the facts constituting his claim for relief . . . ." 576 F.2d at 249–250. Explaining further, the court said that the plaintiff was required to "allege facts showing affirmative conduct upon the part of the defendant which would . . . lead a reasonable person to believe that he did not have a claim for relief." 576 F.2d at 250.[13]

It is apparent from the record that plaintiff knew, or reasonably should have known, of the existence of his causes of action at the time of the occurrences, or when he regained his competency thereafter.[14] In fact, Clulow has admitted as much, stating that, "Appellant does not contend that he did not know he had some kind of claim or claims against the defendants until they provided him with partial records. He contends that he did not know what kind of a claim or claims he might have." Appellant's Brief on Appeal at p. "j," ¶ 14. In any event there is no basis in his averments for concluding that Clulow was unaware of the existence of his claims until August 17,

---

**13.** *See also United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (malpractice claim under the Federal Tort Claims Act accrues when plaintiff knows of the injury and its cause, not at later date when plaintiff also learns that doctor's acts inflicting injury may constitute medical malpractice). Although none of these are civil rights cases, we do not believe that the policies of the civil rights acts would be defeated by applying them in affirming the ruling of the district court on this point.

**14.** From the record, it appears that Clulow has been legally competent since 1968. I R. 72; II R. 396, 426.

1976, two years before this action was filed.[15]

Plaintiff Clulow makes the further argument that his equitable claims can be barred only by laches, not by the statute of limitations. As to Counts One and Four, in which only declaratory judgments are sought, this argument may have some force, but the weight of authority clearly supports its rejection.

In *Cope v. Anderson,* 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947), the Court dismissed a similar argument in a suit to enforce the statutory liability of shareholders of an insolvent national bank, saying:

> Even though these suits are in equity, the states' statutes of limitations apply. For it is only the scope of the relief sought and the multitude of parties sued which give equity concurrent jurisdiction to enforce the legal obligation here asserted. And equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy.

331 U.S. at 463–64, 67 S.Ct. at 1341 (citations omitted).[16]

State limitations periods have been observed in suits for equitable relief under the civil rights acts on several occasions. *See, e.g., Zuniga v. AMFAC Foods, Inc.,* 580 F.2d 380, 387 n. 10 (10th Cir.1978); *Williams v. Walsh,* 558 F.2d 667, 670–73 (2d Cir.1977) (both equitable relief and legal relief by way of damages were sought in § 1983 suit;

both remedies denied on state limitations grounds); *Madison v. Wood,* 410 F.2d 564, 567–68 (6th Cir.1969); *Swan v. Board of Higher Education,* 319 F.2d 56, 59 n. 5 (2d Cir.1963) (per Justice Marshall, then circuit judge) (injunctive and declaratory relief sought); *see also Nilsen v. City of Moss Point,* 674 F.2d 379 (5th Cir.) *rehearing en banc granted,* 674 F.2d 390 (1982) (discusses the rule with apparent approval as to cases in which period for laches is perceived to be longer than statutory period; holds that laches may bar action *before* statute has run). A thorough and authoritative analysis of this question is presented in *Williams,* in which the Second Circuit discussed *Madison* and *Swan,* among other cases. In *Swan* and *Madison* the principle of observing the limitations period was followed even though only declaratory or equitable remedies were sought.

The crux of the matter in the instant case is that the civil rights claims are assertable as legal rights, enforceable in actions at law as well as in equity; hence equity's jurisdiction is concurrent, not exclusive.[17] And since the plaintiff could have sought relief at law, the statute of limitations period is observed in equity. *See Nemkov v. O'Hare Chicago Corp.,* 592 F.2d 351, 355 (7th Cir. 1979).

The same principle should be applied here. Clulow seeks vindication of federally created rights which could have been the basis for an action seeking only a judgment

---

**15.** Clulow argues in his briefs (Appellant's Brief at "h"–"i," 16) that the last act in furtherance of the conspiracy occurred in October 1976 when the V.A. allegedly was negligent in sending him by mail an incorrect medication in response to his request for a refilling of his prescription. Clulow refers to the V.A. as an "unnamed co-conspirator." This attempt to avoid the statutory bar also fails. Even if a conspiracy is assumed to have existed, for argument's sake, the conspiracy painted by Clulow is one of intentional deprivation of civil rights. Clulow has alleged only *negligent* acts by the V.A. in 1976, Appellant's Brief in Reply to Brief of Appellee Faulkner at 34–35, and so has failed completely to give any plausible basis for his assertion that the assumed conspiracy was still active in 1976.

We have noted allegations in the amended complaint that at a 1961 sanity hearing in Okla-

homa County two V.A. Hospital doctors appeared in court and "erroneously" gave testimony against Clulow concerning his prior commitment records in court and hospital files. I R. 243. These allegations are susceptible of an interpretation of intentionally wrongful actions. The allegations concern, however, only the 1961 proceeding and do not serve to make viable Clulow's claim that in 1976 the V.A. took any overt action as part of a conspiracy against him.

**16.** *Cf. Russell v. Todd,* 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754 (1940).

**17.** We have noted earlier that in Counts Two and Three Clulow sought only legal relief by way of damages.

for damages. As in *Cope,* we feel that equitable relief should be withheld since the corresponding legal relief would be barred. Accordingly we must uphold the district court's dismissal of Counts One through Four.

## V

In Count Six of his Amended Complaint, plaintiff alleges that all of the events described in the previous counts are tied together in one conspiracy. The district court dismissed this count on the basis that the plaintiff had made only conclusory allegations of conspiracy with no facts pleaded to show the necessary agreement and concerted action. For reasons that follow we conclude that the court's ruling should be affirmed.

 First, we note that here we are concerned with two groups of defendants— the Oklahoma Bar Association defendants and the remaining defendants such as the State of Oklahoma, Sheriff Faulkner, Dr. Tyler and defendant Finis Smith. We are persuaded that the allegations as to the Bar Association and its officers fail to state sufficiently any conspiracy by them with the other defendants in the case. The record is simply devoid of any allegations of facts indicating a possible conspiratorial agreement or actions by these two groups. In these circumstances such a conclusory allegation with no supporting factual averments is insufficient as a matter of law to state a claim for conspiracy. *See Wise v. Bravo,* 666 F.2d 1328, 1333 (10th Cir.1981); *Taylor v. Nichols,* 558 F.2d 561 (10th Cir. 1977); *Slotnick v. Staviskey,* 560 F.2d 31 (1st Cir.1977), *cert. denied,* 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783.

We are mindful that caution is advised in any pre-trial disposition of conspiracy allegations in civil rights actions. *Fisher v. Shamburg,* 624 F.2d 156, 162 (10th Cir.1980). This case, however, is distinguishable from *Fisher.* In *Fisher* the plaintiff alleged a conspiracy among the three defendants related to their actions over a brief interval of time during which they were together in a restaurant's parking lot. From those alle-

gations the trial court found a "slight chance" of concerted action. 624 F.2d at 158. Here the plaintiff has failed to make even such minimal factual averments. The mere fact that Clulow's mental health commitments were regarded by the O.B.A. defendants as relevant to his ability to practice law supports no inference whatsoever of concerted activity; there are no allegations that the O.B.A. defendants participated in any way in the commitment proceedings. Indeed the plaintiff affirmatively avers wholly separate acts alleged to have been committed by the Bar Association defendants and the other defendants, and those acts in no way support an inference of conspiratorial combination.

 Considering these two groups of defendants separately, we conclude that the same defenses that were held sufficient in Parts III and IV of this opinion are equally valid here with respect to Count Six. Thus the conspiracy claim against the O.B.A. and its officers must also fail because of their immunity in connection with their functions. The conspiracy claim against the other defendants is barred by the two-year statute of limitations prescribed by 12 Okla. Stat. § 95(3). As to this second group of defendants, the statute of limitations began to run no later than the date of the last overt act allegedly committed in furtherance of the conspiracy. *Crosswhite v. Brown,* 424 F.2d 495, 496–97 (10th Cir.1970) (holding untimely, under the Oklahoma limitation, a civil conspiracy claim asserted under §§ 1983 and 1985). Since there is no connection alleged between the actions of this second group of defendants and the Bar Association defendants, we must focus on the last overt act allegedly done by any of the second group. In Count Four of the amended complaint, referring to a sanity hearing and acts by deputy sheriffs and others, the last act allegedly occurred in 1972. The acts averred in Counts One, Two and Three by Dr. Tyler, former Sheriff Spears and others allegedly occurred prior thereto. We must agree that the conspiracy claim in Count Six is time barred with respect to all of this latter group of defend-

ants, the State of Oklahoma, Sheriff Faulkner, et al.

For the foregoing reasons the judgment of the district court is

AFFIRMED.