Chester A. FISHER, Plaintiff-Appellant,

v.

Lenus SHAMBURG, Bill Howell, and Charles W. Howell, Defendants-Appellees.

No. 78–1711.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 25, 1980.

Decided June 24, 1980.

Rehearing Denied July 22, 1980.

Charles S. Scott of Scott, Scott, Scott & Scott, Topeka, Kan., for plaintiff-appellant.

Justice B. King of Fisher, Patterson, Sayler & Smith, Topeka, Kan., for defendants-appellees.

Before SETH, Chief Judge, and McKAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

The incident giving rise to this litigation took place in the parking lot of a roadside restaurant in Kansas at about 11:30 p. m., December 16, 1975. As plaintiff-appellant Chester A. Fisher, a black man, was entering the front door of the Crossroads Cafe, defendants Lenus Shamburg, Charles Howell and his son Bill, all white men, were leaving. In passing, Shamburg uttered a racial slur directed at Fisher. Although Fisher did not understand exactly what was said, he became uneasy about the safety of his car and left the cafe a few minutes later. The defendants were standing in the parking lot and as Fisher walked towards his car, insulting racial remarks were again made and Shamburg hit Fisher. A fight ensued involving Fisher and all three of the defendants. Fisher received minor injuries and was treated at a local hospital. Shamburg was subsequently tried in state court and convicted of criminal assault.

Fisher filed this action in federal court for compensatory and punitive damages, alleging that defendants conspired to deny him rights protected by the Thirteenth Amendment and 42 U.S.C. § 1985(3). The court below granted defendants' motion for summary judgment, holding that the alleged conspiracy does not provide a cause of action under either the Thirteenth Amendment or 42 U.S.C. § 1985(3). The primary issue presented on appeal is whether the allegation of a racially motivated conspiracy under the circumstances of this case states a deprivation of "the equal protection of the laws, or of equal privileges and immunities under the laws" within the meaning of section 1985(3). We hold that it does. Furthermore, upon examination of the evidence in light of the elements of a 1985(3) action as defined in *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), we hold that Fisher has raised genuine issues of fact precluding the trial court's grant of summary judgment for the defendants.

I.

*Section 1985(3) Claim*

The portion of 42 U.S.C. § 1985(3) which is relevant to our consideration states:

"If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws [and] . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, . . . the party so injured or

deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

The Supreme Court construed this statutory language in *Griffin v. Breckenridge*, 403 U.S. at 102–103, 91 S.Ct. at 1798–1799, setting out four requirements which must be met by a plaintiff who seeks to state a cause of action under section 1985(3):

> "To come within the legislation a complaint must allege that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.' "

The first of the four requirements relevant to our analysis of a 1985(3) cause of action is that of a conspiracy. The judge stated that the "slight chance" the defendants did conspire created a genuine issue of fact. Rec., vol. I, at 218. We therefore assume for purposes of our analysis that there is sufficient evidence of a conspiracy to survive a motion for summary judgment on that ground.[1]

The third and fourth elements are also easily satisfied here. The third element requires that an act be done in furtherance of the conspiracy. It is undisputed that

Shamburg assaulted Fisher, an act for which he was convicted of criminal assault in state court. The fourth element is in the form of two alternatives. Fisher must either allege that he was injured in his person or property, *or* that he was deprived of having and exercising any right or privilege of a citizen of the United States. *Griffin*, 403 U.S. at 103, 91 S.Ct. at 1798. Fisher's allegation of personal injury satisfies this element.

We focus our attention on the second requirement of a section 1985(3) cause of action because we believe it is here that the trial court erred in its analysis. This element requires a purpose to deprive any person of the equal protection of the laws, or of equal privileges and immunities under the laws. As construed by the Court in *Griffin*, the element itself has two parts: a "racial, or perhaps other-wise class-based, invidiously discriminatory animus," which "aim[s] at a deprivation of the equal enjoyment of rights secured by the law to all." 403 U.S. at 102, 91 S.Ct. at 1798. It is beyond argument that a racially motivated conspiracy to assault provides the required discriminatory animus. *Id.* at 103, 91 S.Ct. at 1798. There is ample evidence in the record to create an issue of fact as to whether the assault on Fisher was motivated by his race.

■ However, to afford Fisher a remedy, the purpose of the conspiracy must have been, *directly or indirectly*, to deprive him of equal privileges and immunities within the meaning of 1985(3). Fisher's complaint alleges that the conspiracy to assault him deprived him of the right to enjoy the public accommodations offered by the Crossroads Cafe.[2] Thus, the specific question we

---

1. While the trial judge did not base his grant of summary judgment on Fisher's failure to establish a conspiracy, defendants vigorously urge on appeal that Fisher failed to present any evidence whatsoever of a conspiracy. *See* Part II, *infra*.

2. The trial court's order states there is no evidence in the record to show that the defendants' actions were carried out with the intent of depriving Fisher of the services of the cafe.

We point out, however, that section 1985(3) does not require scienter:

> "The motivation requirement introduced by the word 'equal' into the portion of § 1985(3) before us must not be confused with the test of 'specific intent to deprive a person of a federal right made definite by decision or other rule of law' articulated by the plurality opinion in *Screws v. United States*, 325 U.S. 91, 103, 65 S.Ct. 1031, 89 L.Ed. 1495, 1504, 162 A.L.R. 1330, for prosecutions under 18 U.S.C. § 242. Section 1985(3), unlike § 242,

must address is whether a racially motivated conspiracy to deprive a person of the full enjoyment of a place of public accommodation constitutes a deprivation of equal privileges and immunities under section 1985(3).

It was established in *Griffin v. Breckenridge*, 403 U.S. at 104–105, 91 S.Ct. at 1799–1800, that one of the "privileges and immunities" referred to in section 1985(3) is the right to be free from the badges and incidents of slavery. *See Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 383, 99 S.Ct. 2345, 2354, 60 L.Ed.2d 957 (1979) (Stevens, J., concurring). Section 2 of the Thirteenth Amendment authorizes Congress "to determine what are the badges and incidents of slavery, and the authority to translate that determination into effective legislation." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 440, 88 S.Ct. 2186, 2203, 20 L.Ed.2d 1189 (1968); *Civil Rights Cases*, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). As shown below, we believe Congress has declared its intention that a racially motivated interference with one's right to enjoy places of public accommodation constitutes such a badge of slavery.

■ The right of a person to avail himself of public inns is founded in the English common law. *See Civil Rights Cases*, 109 U.S. at 40–41, 3 S.Ct. at 42–43 (Harlan, J., dissenting); *Klim v. Jones*, 315 F.Supp. 109, 118–120 (N.D.Cal.1970); Hogan, *The Innkeeper's Lien at Common Law*, 8 Hastings L.J. 33 (1956). This court has recognized that the common law duty of an innkeeper to provide accommodations includes the duty to accept persons without regard to their race. *Thomas v. Pick Hotels Corp.*, 224 F.2d 664 (10th Cir. 1955).

On March 1, 1875, Congress passed a Civil Rights Act, 18 Stat. 335, which codified the common law right and provided civil and criminal penalties for interference with that right because of one's race or previous condition of servitude:

> "Sec. 1. That all persons within the jurisdiction of the United States shall be entitled to the full and equal enjoyment of the accommodations, advantages, facilities and privileges of inns, public conveyances on land or water, theaters and other places of public amusement; subject only to the conditions and limitations established by law, and applicable alike to citizens of every race and color, regardless of any previous condition of servitude.
>
> "Sec. 2. That any person who shall violate the foregoing section by denying to any citizen, except for reasons by law applicable to citizens of every race and color, and regardless of any previous condition of servitude, the full enjoyment of any of the accommodations, advantages, facilities or privileges in said section enumerated, or by aiding or inciting such denial, shall for every such offense forfeit and pay the sum of $500 to the person aggrieved thereby, to be recovered in an action of debt with full costs; and shall also, for every such offense, be deemed guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $500 nor more than $1,000, or shall be imprisoned not less than thirty days nor more than one year; . . . ."

In 1883, however, this statute was held unconstitutional. *Civil Rights Acts*, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). The Court held that denial of admission to an inn or other place of public accommodation because of race did not constitute a badge or incident of slavery. In vigorous dissent, Mr. Justice Harlan declared that the Act in question was constitutional under the Thirteenth Amendment because the discriminatory conduct proscribed by the Act clearly constituted a badge of slavery. *Id.* at 43, 3 S.Ct. at 44.

In Title II of the Civil Rights Act of 1964, Congress broadly declared that all persons shall be entitled to full enjoyment of places of public accommodation without discrimi-

---

contains no specific requirement of 'wilfulness.' Cf. *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492, 505. The motivation aspect of § 1985(3) focuses not on scien-

ter in relation to deprivation of rights but on invidiously discriminatory animus." *Griffin*, 403 U.S. at 102 n. 10, 91 S.Ct. at 1798.

nation based on race and provided injunctive relief for violations of the Act.[3] Although the *Civil Rights Cases* have never been expressly overruled, the Court in *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 441 n. 78, 88 S.Ct. 2186, 2204, 20 L.Ed.2d 1189 (1968), cast doubt on their present soundness. After noting the conclusion of the majority in the *Civil Rights Cases,* the Court said:

"Mr. Justice Harlan dissented, expressing the view that 'such discrimination practised by corporations and individuals in the exercise of their public or quasi-public functions is a badge of servitude the imposition of which Congress may prevent under its power, by appropriate legislation, to enforce the Thirteenth Amendment.' *Id.,* 109 U.S. at 43, 3 S.Ct., at 44.

"*Whatever the present validity of the position taken by the majority on that issue—a question rendered largely academic by Title II of the Civil Rights Act of 1964,* 78 Stat. 243 (see *Heart of Atlanta Motel v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258; *Katzenbach*

*v. McClung,* 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290)—we note that the entire Court agreed upon at least one proposition: The Thirteenth Amendment authorizes Congress not only to outlaw all forms of slavery and involuntary servitude but also to eradicate the last vestiges and incidents of a society half slave and half free; . . . ."

*Id.* (emphasis added). As did Mr. Justice Harlan in 1883, we believe Congress has once again defined the racially motivated denial of one's enjoyment of a place of public accommodation as a badge of slavery.

■ Nevertheless, the district court held here that the injunctive remedy provided by Title II is exclusive,[4] and Fisher is thereby precluded from maintaining a claim for damages under 1985(3). We disagree. In *United States v. Johnson,* 390 U.S. 563, 88 S.Ct. 1231, 20 L.Ed.2d 132 (1968), hoodlums who conspired to assault blacks in the exercise of their right to patronize a restaurant were prosecuted under 18 U.S.C. § 241, the criminal counterpart of section 1985.[5] The

---

3. Title II, 42 U.S.C. § 2000a *et seq.,* provides in pertinent part as follows:

§ 2000a

"(a) All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."

§ 2000a–2

"No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive, any person of any right or privilege secured by section 2000a . . of this title, or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten or coerce any person with the purpose of interfering with any right or privilege secured by section 2000a . . . of this title, or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 2000a . . of this title."

§ 2000a–3

"Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a–2 of this title, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or

other order, may be instituted by the person aggrieved . . . ."

4. Title 42 U.S.C. § 2000a–6 provides:

"(b) The remedies provided in this subchapter shall be the exclusive means of enforcing the rights based on this subchapter, but nothing in this subchapter shall preclude any individual or any State or local agency from asserting any right based on any other Federal or State law not inconsistent with this subchapter, including any statute or or-' dinance requiring nondiscrimination in public establishments or accommodations, or from pursuing any remedy, civil or criminal, which may be available for the vindication or enforcement of such right."

5. Title 18 U.S.C. § 241 provides:

"If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

"If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—

"They shall be fined not more than $10,000 or imprisoned not more than ten years, or

defendants argued there that section 241 was inapplicable because Title II provided the exclusive remedy for violation of the right to enjoy public accommodations. However, the Court held that the legislative history of Title II makes it clear that the exclusivity of the Act's injunctive remedy applies only to actions against the owners and proprietors of public accommodations and not outsiders such as the defendants. The rationale for limiting the remedy to injunctive relief was to provide the proprietor with a judicial determination of whether his facility was covered by Title II before exposing him to civil or criminal liability. *Johnson*, 390 U.S. at 564–65, 88 S.Ct. at 1232–33. Accordingly, the Court declined to extend this rationale to protect outsiders not connected with the public facility. "We refuse to believe that hoodlums operating in the fashion of the Ku Klux Klan, were given protection by the 1964 Act for violating those 'rights' of the citizen that § 241 was designed to protect." *Id.* at 566, 88 S.Ct. at 1234.

The district court here relied on the later case of *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), to bolster its conclusion that *Johnson* does not support a remedy under section 1985(3) for Fisher. In *Adickes*, 398 U.S. at 150 n. 5, 90 S.Ct. at 1604, the Court stated:

> both; and if death results, they shall be subject to imprisonment for any term of years or for life."

6. The decision in *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), is distinguishable. The Court held there that a person injured by a conspiracy to violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, could not seek a separate damage remedy under section 1985(3). But the conclusion in that case was based on the fact that Title VII contains a mandatory administrative scheme designed to promote settlement of disputes through voluntary conciliation, specific time limits, and defined remedies which include back pay.

> "If a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of these detailed and specific provisions of the law. Section 1985(3) expressly authorizes compensatory damages; punitive damages might well follow. The plaintiff or defendant might demand a jury trial. The short and precise time limitations

"In *United States v. Johnson*, 390 U.S. 563, 88 S.Ct. 1231, 20 L.Ed.2d 132 (1968), the Court held that violations of § 203(b) of the Public Accommodations Title could serve as the basis for criminal prosecution under 18 U.S.C. § 241 (another civil rights statute) against 'outsiders,' having no relation to owners and proprietors of places of public accommodations, notwithstanding the 'exclusive' remedy provision of § 207(b). It is doubtful whether the *Johnson* reasoning would allow recovery under § 1983 for Kress' alleged violation of § 201, and indeed the petitioner does not otherwise contend."

The district court misapplied *Adickes*. There the exclusive injunctive remedy would bar recovery of damages because the defendant was the *proprietor* of the restaurant involved. Thus, *Adickes* is distinguishable from both *Johnson* and the present case. Injunctive relief is an effective enforcement mechanism when applied to proprietors, owners, and their personnel. However, an injunction is a hollow remedy to deter outsiders from using violence to prevent blacks from using facilities owned and operated by third parties.

The holding in *Johnson* is dispositive of this case.[6] The Court in *Griffin* stated that

> of Title VII would be grossly altered. Perhaps most importantly, the complainant could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII."

*Id.* at 375–76, 99 S.Ct. at 2351.

In contrast, Title II has no such comprehensive administrative scheme which could be avoided by bringing a section 1985(3) action. Moreover, we have already pointed out that Title II is primarily directed at proprietors and employees of places of public accommodation, not outsiders such as defendants here. In *Novotny*, the Court specifically noted that it was not deciding "whether a plaintiff would have a cause of action under § 1985(3) where the defendant was not subject to suit under Title VII or a comparable statute. Cf. *United States v. Johnson*, 390 U.S. 563, 88 S.Ct. 1231, 20 L.Ed.2d 132." *Id.* at 370 n. 6, 99 S.Ct. at 3348.

section 241 is the closest remaining criminal analogue to section 1985(3), 403 U.S. at 98, 91 S.Ct. at 1796, and that both provisions were derived from the same original statute. *Id.* at 100 n. 8, 91 S.Ct. at 1797. Under the factual allegations of the present case, the defendants could be criminally liable under 18 U.S.C. § 241, as interpreted by *Johnson.* We find no logical reason to distinguish between the criminal liability imposed by section 241 and the civil liability imposed by section 1985(3).

■ Accordingly, we hold that a racially motivated conspiracy to interfere with one's enjoyment of a place of public accommodation constitutes a badge of slavery which is a deprivation of equal privileges and immunities under 42 U.S.C. § 1985(3).

## II.

### *The Conspiracy Issue*

Defendants urge on appeal that summary judgment was nevertheless appropriate because Fisher failed to produce any evidence of a conspiracy. Upon review of the record, however, we conclude that the trial court correctly refused to base its grant of summary judgment on this ground.

■ To support their motion for summary judgment, defendants offered the transcript[7] of Shamburg's criminal trial, asserting it contained no evidence of a conspiracy. However, conspiracy was not an issue in that proceeding and therefore evidence relevant to its existence was not developed.

■ Direct evidence of a conspiracy is rarely available, and the existence of a conspiracy must usually be inferred from the circumstances. *Loew's, Inc. v. Cinema Amusements,* 210 F.2d 86, 93 (10th Cir. 1954). As Justice Black stated in *Adickes v.*

*Kress & Co.,* 398 U.S. at 176, 90 S.Ct. at 1618 (concurring opinion):

"The existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide. In this case petitioner may have had to prove her case by impeaching the store's witnesses and appealing to the jury to disbelieve all that they said was true in the affidavits. The right to confront, cross-examine and impeach adverse witnesses is one of the most fundamental rights sought to be preserved by the Seventh Amendment provision for jury trials in civil cases. The advantages of trial before a live jury with live witnesses, and all the possibilities of considering the human factors, should not be eliminated by substituting trial by affidavit and the sterile bareness of summary judgment."

■ Here, the issue of conspiracy must be resolved on the credibility of the witnesses. Credibility is properly evaluated by the trier of facts. *Eagle v. Louisiana & Southern Life Insurance Co.,* 464 F.2d 607 (10th Cir. 1972). Summary judgment should not be used to prevent the necessary examination of conflicting testimony and credibility in the crucible of a trial. *National Aviation Underwriters, Inc. v. Altus Flying Service, Inc.,* 555 F.2d 778, 784 (10th Cir. 1977).

We reverse and remand for trial.

7. Fisher contends on appeal that the trial court erred in permitting the defendants to use the transcript of Shamburg's criminal trial to support their motion for summary judgment. Although we reverse the trial court on other grounds, we note that it is proper to consider a certified transcript on a motion for summary judgment. *See Askew v. Bloemker,* 548 F.2d 673, 679 (7th Cir. 1976); *Langston v. Johnson,* 478 F.2d 915, 918 n. 17 (D.C.Cir. 1973), and cases cited therein.