In re William K. BUROKER, Kenneth G. Buroker, Debtors.

Don B. and Kaye RAYBOURN, Plaintiff,

v.

William K. BUROKER, Kenneth G. Buroker, Defendants.

Bankruptcy Nos. 3-84-00889, 3-84-00890.

Adv. Nos. 3-84-0192, 3-84-0193.

United States Bankruptcy Court, S.D. Ohio, W.D.

May 7, 1987.

See also, D.C., 61 B.R. 10.

John T. Ducker, Dayton, Ohio, John A. Poppe, Wapakoneta, Ohio, for plaintiffs.

Thomas R. Noland, Dayton, Ohio, for defendants.

Milton L. Sprowl, Dayton, Ohio, Trustee.

## DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the Court upon the motion for summary judgment by Don B. Raybourn and Kaye Raybourn, Plaintiffs, against William K. Buroker and Kenneth G. Buroker, Defendants, in consolidated adversary proceedings within the consolidated bankruptcy cases of the defendants. Plaintiffs seek to have the debt of $105,000 owed to them by defendants declared an exception to discharge pursuant to 11 U.S.C. § 523(a)(6).

The debt alleged to be nondischargeable is evidenced by the proof of claim for $105,000 and interest from March 20, 1984 for a total amount of $122,343.52 as of the date of the filing of the petition. The debt is based upon a judgment in a tort suit rendered by the Common Pleas Court of Miami County Ohio as modified by the Court of Appeals of Miami County. Defendants have become "pro se" since their request and their case attorney withdrew as counsel in March, 1987.

### FACTS

The claim of plaintiffs arose from defendants' interference with a bar and restaurant business. Plaintiffs asserted and proved to a jury that Kenneth Buroker harassed them with threats of violence, removed electric fuses causing blackouts, caused disturbances in the restaurant, all in an effort to force plaintiffs to vacate the restaurant or sell to him. The harassment took a violent form when Raybourn finally agreed to sell his business on June 16, 1980. That evening Buroker, his son William and a friend assaulted the plaintiffs in their apartment above the restaurant by firing a gun at the door and window. Trial testimony revealed that at least one of the Burokers was armed, and at least two shots were fired to which Raybourn responded by firing shots at the door from inside. William Buroker was wounded. The Raybourns professed fear for their lives during the altercation.

The matter was tried to a jury on July 20, 1982. The jury returned a verdict against Kenneth Buroker and William Buroker, jointly and severally, for $5,000 compensatory damages and $100,000 punitive damages and an additional sum of $75,000 against Kenneth Buroker individually. On appeal the individual judgment against Kenneth Buroker was reversed for insufficiency of evidence. The Court of Appeals modified and affirmed the judgment as to the $5,000 compensatory damages and $100,000 punitive damages, holding the evi-

dence supported the jury verdict that the plaintiffs were placed in a state of extreme fear.

The Burokers filed bankruptcy on April 25, 1984. Plaintiffs then filed a complaint to determine dischargeability of their claim. With the motion for summary judgment, plaintiffs have attached a copy of their Proofs of Claim, debtors' withdrawal of their objection to allowance of plaintiffs' claims on the basis the judgment was obtained by fraud, their complaint in the state court case, judgment of Judge Richard Finefrock on the verdict and the opinion of the Court of Appeals of Miami County, Ohio.

Plaintiffs rely upon the Court of Appeals decision attached to the motion which characterized the conduct of the Burokers at page 14 of the opinion as follows:

> The actions of the Burokers in storming the Raybourn's apartment and firing into it were certainly malicious and a willful and wanton disregard for the rights of the appellee, (Raybourn). It is certainly not unreasonable that appellee was placed in a state of extreme fear.... We cannot say the award of $5,000 to appellee Donald Raybourn for compensatory damages and $100,000 in punitive damages is not sustained by the evidence.

### LAW

In consideration of a motion for summary judgment the Court is governed by Bankruptcy Rule 7056 which incorporates the Fed.R.Civ.P. 56. For the movants to prevail, they must establish that there is no genuine issue as to any material fact and that the movants are entitled to judgment as a matter of law. Case law requires the court to view the evidence in the light most favorable to the party opposing the motion. *In re Mueller*, 34 B.R. 869 (Bankr.Colo. 1983).

Plaintiffs in this case rely upon the judgment rendered against defendants in the state court and the appellate court decision as the bases for summary judgment. Plaintiffs contend that the jury verdict and the appellate court decision meet their burden because the issues determined in the state court actions collaterally estop de-

fendants from relitigating the issues in this court. Plaintiff also expects this court will give "full faith and credit" to the judgment of the state court. While federal courts do respect judgments of state courts, the special relief of bankruptcy requires that dischargeability questions meet all of the evidentiary requirements of bankruptcy law.

The Supreme Court in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) held that a consent judgment was not res judicata to an action contesting the dischargeability of the debt on the grounds of the debtor's fraud, deceit and malicious conversion under the bankruptcy statute. The effect of the decision was to permit the creditor to present extrinsic evidence to the judgment and record of the state court action on the bankruptcy dischargeability issue. This case preserved to the Bankruptcy Court the exclusive jurisdiction to determine dischargeability of debts.

■ This court accepts the view that although Congress granted exclusive jurisdiction to Bankruptcy Court to hear and determine the issue of dischargeability of debt, the doctrine of collateral estoppel applies when the precise issue was litigated previously in a state court. The Sixth Circuit in *Spilman v. Harley*, 656 F.2d 224, 227 (1981) cogently states the reasoning for use of collateral estoppel in the dischargeability case.

> Applying collateral estoppel is logically consistent with the Supreme Court's decision in *Brown* and the exclusive jurisdiction of the bankruptcy courts while at the same time encouraging judicial economy. The determination whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in the case. The bankruptcy court has the exclusive jurisdiction to make that legal conclusion. It must apply the statute to the facts and decide to discharge or not. Therefore, res judicata does not apply to prevent litigation of every issue which might have been covered in the state court proceeding on the debt. However, that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require

the bankruptcy court to redetermine all the underlying facts.

Case law has established a four part test to determine the preclusive effect of collateral estoppel in dischargeability proceedings. The elements of the test are enunciated in *In re Ross*, 602 F.2d 604 (3rd Cir. 1979) as follows:

(1) The issue sought to be precluded must be the same as that involved in the prior action;

(2) The issue must have been actually litigated;

(3) It must have been determined by a valid and final judgment; and

(4) The determination must have been essential to the final judgment.

■ Collateral estoppel only treats as preclusive those issues actually and necessarily decided in the prior suit. In *Spilman, supra*, the court held that the elements for collateral estoppel were not established because the prior trial record was incomplete and the court could not determine whether the issue of willful and malicious action was actually litigated and was necessary in the state court decision. Therefore, the court of appeals remanded the case to the bankruptcy court "to determine by looking at the entire state court record if the issue of willful and malicious action on the part of appellee was actually litigated and was necessary to the state court decision." 656 F.2d at 229.

■ The entire certified transcript of the state court proceedings has been read by this court and it is quite clear from the instructions given to the jury that the issues of willfulness and maliciousness were considered and decided by the jury. The jury was instructed that to find an assault there must have been an "intent on the part of the Defendant or Defendants to inflict some physical injury no matter how slight upon the person of the Plaintiff." (Tr. 622) The jury was also instructed that:

exemplary or punitive damages may be awarded by the Jury only when the Jury finds that the assault which was the proximate result of the injuries was prompted by actual malice.

Malice in fact or actual malice is defined to mean a feeling or personal hatred or ill will or revenge of one person toward another without just cause or excuse.

(Tr. 629)

The jury's return of a finding in favor of Mr. Raybourn on both the compensatory and punitive damages claims indicates that both the issue of willfulness and maliciousness were actually litigated and necessary to the state court decision.

Debtors maintain, however, that collateral estoppel does not apply here because the jury decided the case on the basis of a preponderance of the evidence rather than by clear and convincing evidence. The transcript reveals that the state court judge spoke only of a preponderance of the evidence. This court is aware that a majority of courts have held that the burden of proof in dischargeability questions is one of clear and convincing evidence. However, resolution of whether collateral estoppel applies in a bankruptcy court's dischargeability proceeding where a state court has previously used a preponderance of evidence standard is not necessary in this adversary proceeding.

The task here is to determine the *nature* of the debt, i.e. whether it arose out of the willful and malicious conduct of the debtors. The present question before the court is whether summary judgment should be granted; the court may resort to the state court record for that purpose. "It is well settled that a certified transcript of judicial or administrative proceedings may be considered on a motion for summary judgment." *Langston v. Johnson*, 478 F.2d 915, 918 n. 17 (D.C.Cir.1973). *Accord: Fisher v. Shamburg*, 624 F.2d 156, 162 n. 7 (10th Cir.1980); *Advance Financial Corp. v. Isla Rica Sales, Inc.*, 747 F.2d 21, 27 (1st Cir.1984). After examining the entire state court transcript, this court finds that there exists no genuine issue as to any material fact and that the certified state court transcript provides clear and convincing evidence to this court that the debt of the Burokers to Don Raybourn was for willful

and malicious injury caused by the Burokers.

 As used in Section 523(a)(6) of the Bankruptcy Code "willful" means deliberate or intentional. *Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir.1986). Both Mr. Raybourn and Mr. Ed Gravitt testified that Kenneth Buroker fired a gun through a window into the restaurant. Mr. Gravitt further testified that the gun was aimed at him but that he jumped out of the way.

William Buroker testified that he and his father, along with another man, went to the lodge because "we were gonna throw him out." (Tr. 310) He also testified that he shot first, although at the lock of the door. All of these actions by the debtors evidence that their actions were deliberate or intentional and, therefore, "willful."

" 'Malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Id.* The Burokers drove to the lodge to forcibly "evict" Mr. Raybourn. Upon arriving, they threatened Mr. Raybourn and Mr. Gravitt, demanded entrance to the premises, fired at least three shots, and retreated only after Mr. Raybourn shot William Buroker in the arm. There was clearly no justifiable cause or excuse for this life-endangering conduct of the debtors. Even if ill-will or a specific intent to do harm was a requisite to a finding of malice, those conditions clearly existed in the present case. The deliberate shooting into a structure occupied by others is clearly a malicious act.

The court notes that the state court judgment for assault was granted to Don B. Raybourn only and not to Kaye Raybourn. Therefore, only the debt owing Don Raybourn in nondischargeable.

For the foregoing reasons, it is hereby ORDERED that the motion of Don B. Raybourn for summary judgment is GRANTED and the debt of William K. Buroker and Kenneth G. Buroker to Don B. Raybourn is declared nondischargeable in the amount of $5,000 compensatory damages and $100,000 punitive damages, plus interest.