In re Thomas LAZAR, Debtor.

Susan SWANNER, Plaintiff,

v.

Thomas LAZAR, Defendant.

Bankruptcy No. 95–51984–R.
Adv. No. 96–4069–R.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

May 21, 1996.

Michael Cafferty, Detroit, Michigan, for Plaintiff.

Keith Schofner, Southfield, Michigan, for Defendant.

*OPINION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

STEVEN W. RHODES, Chief Judge.

I.

In this adversary proceeding, the plaintiff, Susan Swanner, seeks a judgment that a

debt owing to her from the debtor, Thomas Lazar, is nondischargeable under 11 U.S.C. § 523(a)(4) and (6) and that Lazar should be denied a discharge under 11 U.S.C. § 727(a)(2) and (3). The debt results from a legal malpractice judgment entered in the Oakland County Circuit Court in Swanner's favor against Lazar in the amount of $487,-500 following a jury trial.

This Court previously dismissed Swanner's claim under 11 U.S.C. § 523(a)(4) on the ground that the debt was not the result of a defalcation while acting in a fiduciary capacity arising from an express trust over an identifiable *res*. *See Hartwood Aviation, Inc. v. Hamilton (In re Hamilton),* 147 B.R. 779 (Bankr.D.Colo.1992), *aff'd,* 46 F.3d 1151 (10th Cir.1994) (table).

The Court also previously denied Lazar's motion to dismiss the claim under 11 U.S.C. § 523(a)(6), which was brought on the basis that Swanner's claim was filed beyond the applicable statute of limitations for intentional torts. The Court rejected Lazar's argument that Swanner's present claim seeks damages for an intentional tort and is thus a new claim beyond the scope of her prior legal malpractice action. The Court held that Swanner's claim under 11 U.S.C. § 523(a)(6) asserts only the nondischargeability of the prior state court judgment and therefore is not time barred by the statute of limitations applicable to intentional torts.

The matter is now before the Court on Swanner's motion for summary judgment on her claim under 11 U.S.C. § 523(a)(6).

Swanner contends that the debt arose from a "willful and malicious injury" under 11 U.S.C. § 523(a)(6). Lazar opposes the motion, contending that at worst the debt arose from professional negligence on his part.

## II.

■ After reviewing the evidence submitted at the state court trial,[1] the Court concludes that there are no genuine issues of material fact, that the injury caused to Swanner was willful and malicious, and that Swanner is entitled to judgment as a matter of law.

The basic facts are as follows: Lazar is an attorney with a general practice in Farmington Hills, Michigan. On March 1, 1992, Swanner, her husband, and their son, Jake, moved to Michigan from North Carolina with the intent of establishing permanent residence. On June 30, 1992, Swanner met with Lazar because her husband had threatened to move back to North Carolina and take Jake with him. On July 1, 1992, Lazar filed a divorce complaint in Oakland County Circuit Court, and on July 2, 1992, he obtained an *ex parte* custody order from Judge Mester ancillary to the divorce proceeding. When they first met, Swanner told Lazar that she had resided in Michigan only since March 1, 1992, so Lazar filed the divorce complaint knowing that the 180 day residency requirement for jurisdiction was not met. The complaint nevertheless alleged that this jurisdictional requirement was met. Swanner's husband took Jake to North Carolina on July 1, 1992, before the Oakland County

---

1. This review of the evidence at trial was not undertaken for the purpose of determining the collateral estoppel effect of the prior state court judgment. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Wheeler v. Laudani,* 783 F.2d 610 (6th Cir.1986); *Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981); and *Rally Hill Prod., Inc. v. Bursack (In re Bursack),* 65 F.3d 51 (6th Cir.1995). It is clear that there was no claim or finding of intentional conduct by Lazar in the prior state court case. Because that issue was not litigated, it is inappropriate to apply the doctrine of collateral estoppel.

Rather, this review is undertaken to determine whether Swanner is entitled to a summary judgment of nondischargeability under 11 U.S.C. § 523(a)(6), given Lazar's admissions in his testimony in the prior trial. That testimony can be used against him in the context of the present

motion for summary judgment. *See* Rule 56(c), Fed.R.Civ.P. ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). *See also Brockman Music v. Watson (In re Watson),* 117 B.R. 291 (Bankr.W.D.Mo.1990); *Valerio v. Dahlberg,* 716 F.Supp. 1031 (S.D.Ohio 1988); *Raybourn v. Buroker (In re Buroker),* 72 B.R. 993 (Bankr. S.D.Ohio 1987); *Kern v. Tri–State Ins. Co.,* 386 F.2d 754 (8th Cir.1967); *Shulins v. New England Ins. Co.,* 360 F.2d 781 (2d Cir.1966); and *Ellis v. Cates,* 178 F.2d 791 (4th Cir.1949), *cert. denied,* 339 U.S. 964, 70 S.Ct. 999, 94 L.Ed. 1373 (1950). *See also* Fed.R.Evid. 801(d)(2)(A).

Circuit Court custody order could be served on him. On July 2, 1992, he filed an action in North Carolina and obtained a custody order. Swanner then went to North Carolina, hired an attorney and on July 14, 1992, stipulated in court to jurisdiction there and agreed not to remove Jake, in order to have an opportunity to see Jake again. An order to that effect was signed on July 25, 1992, and filed on August 3, 1992. During that time period, Swanner called Lazar several times from North Carolina. Then, on August 1, 1992, relying on the Michigan order, and, she states, Lazar's advice, Swanner brought Jake back to Michigan. After she did that she was charged with kidnapping, arrested and incarcerated. She also lost custody of Jake.

At the trial on the malpractice action, Lazar testified that when he filed the divorce case, he knew that Swanner had not been a resident for 180 days, as required for jurisdiction in a divorce case. (Tr. 8/15/95, p. 17) He did not conduct any research to determine the effect of filing a divorce case without jurisdiction. (*Id.*) He intended, however, to remedy the defect in the future. (*Id.* at p. 18) He filed a divorce complaint without jurisdiction because he decided it was the best way to get a temporary custody order to protect against Swanner's husband kidnapping Jake out of state. (*Id.*) He did no research to determine whether the jurisdictional defect could be corrected by filing an amended complaint. (*Id.* at p. 20) Nevertheless, he was sure of what he was doing. (*Id.*) He felt that if the complaint was defective, he might file either a new complaint or an amended complaint. (*Id.* at p. 23) He did not tell Swanner that the court would have no jurisdiction over the complaint when he filed it. (*Id.* at p. 24)

Lazar considered filing under the Uniform Child Custody Act,[2] which does not have a residency requirement, but decided to file a divorce complaint instead. (*Id.*) He is not sure whether he explained this decision to Swanner, but he thinks he probably did not because she would not have understood it. (*Id.* at pp. 25–26) He filed the divorce complaint knowing that the court would not have jurisdiction, because he felt the best interests of the child would nevertheless be litigated. (*Id.* at p. 28) He decided to file a divorce complaint because he felt he could get a hearing more quickly and because judges are less familiar with the Uniform Child Custody Act. (*Id.* at p. 28) Also, he was not sure that there would be jurisdiction under the UCCJA because of Jake's residence. (*Id.* at p. 30) He did no research under the UCCJA. (*Id.* at p. 31) When he filed, he did not tell the judge that the jurisdictional allegation was untrue. (*Id.* at p. 32) Nevertheless, he thought he fulfilled his duty of candor and honesty to the court. (*Id.* at p. 33) Under the UCCJA there are jurisdictional alternatives to the 180 day residency requirement. (*Id.* at p. 36)

Lazar also believes he fulfilled his duty to give his client sufficient information to make a reasonable decision about filing for divorce. (*Id.* at p. 49) He believed that the temporary custody order was valid even though the court did not have jurisdiction. (*Id.* at p. 51) He has no authority for that, except that later Judge Mester sustained that position. (*Id.* at p. 52) However, the Court of Appeals later reversed that decision. (*Id.*) He believes that Judge Mester's temporary custody order was valid until the Court of Appeals decision invalidated it. (*Id.* at p. 55) When Swanner was in North Carolina after her husband removed Jake there, he told her that the Michigan order was valid. (*Id.* at pp. 56–57, 60) Swanner never told him, however, that while in North Carolina she signed a paper in court stipulating to jurisdiction in North Carolina. (*Id.* at p. 58) He was not aware of the custody order issued in North Carolina at that time. (*Id.* at p. 61) He simply told her to follow her North Carolina attorney's advice. (*Id.*) He would never tell a client to violate a court order. (*Id.* at p. 63) He never told Swanner or her family that the Michigan order took precedence over the North Carolina order. (*Id.* at p. 89) He agrees that if two states claim jurisdiction over a child, then the issue is not which order came first, but which state is in the

---

2. During the state court trial, this act was sometimes erroneously called the Uniform Child Custody Act. It is correctly known as the Uniform

Child Custody Jurisdiction Act (UCCJA), M.C.L. § 600.651 and following.

best interest of the child and which has an established custodial environment. (*Id.* at p. 122)

Lazar was discharged about 60 days after he was retained, and replaced by attorney J. Leonard Hyman, who filed a new divorce suit on September 4, 1992. (*Id.* at p. 124) The first time Lazar saw the North Carolina court order was when the Oakland County prosecutor's office called him about the kidnapping charge that had been filed against Swanner. (*Id.* at p. 134) The prosecutor sent him a copy. (*Id.*) Lazar eventually dismissed the first divorce case at the request of the court. (*Id.* at 180)

At trial, Swanner testified differently on some matters. According to her, she did not tell Lazar that she wanted to file for divorce; rather, Lazar said that she needed to file for divorce to prevent her husband from taking Jake to North Carolina. (Tr. 8/17/95) at p. 86) Lazar told her that the 180 day residency requirement would be overlooked and not to worry about it. (*Id.* at p. 87) When she called Lazar from North Carolina, she told him about the consent order in which she agreed not to take Jake out of the state. (*Id.* at pp. 97–98) The North Carolina order was entered on August 3, 1992, but she had already left North Carolina by then. (*Id.* at p. 99) On July 31, 1992, Lazar told her that the Michigan order took precedence because it was filed first and because there was no copy of the North Carolina order in the North Carolina court's file. (*Id.* at pp. 99, 103) She would not have brought the child back to Michigan if Lazar had not instructed her to do so. (*Id.* at p. 109) When she came back to Michigan, Lazar told her to stay in hiding for two to three weeks until he could get the matter straightened out. (*Id.* at p. 111) Lazar told her about the warrant from North Carolina, but Lazar told her not to turn herself in. (*Id.* at p. 113) She was arrested with her son on August 16, 1993, and extradited to North Carolina. (*Id.* at p. 114) She spent a total of 11 days in jail. (*Id.* at p. 122) She did not see her son again until November, 1993. (*Id.* at p. 115) She pleaded guilty to the felony of transporting her child out of state and was still on probation at the time of trial. (*Id.* at p. 125) She was also charged with contempt and required to pay more than $10,000 to her ex-husband and his attorney. (*Id.* at p. 125)

### III.

■ The Court concludes that even if Lazar's testimony is accepted in full, and Swanner's testimony is rejected where it contradicts Lazar's testimony, Swanner is entitled to a judgment of nondischargeability under 11 U.S.C. § 523(a)(6). That section provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

■ The phrase "willful and malicious injury" is defined as follows:

In order to fall within the exception of section 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will. The word "willful" means "deliberate or intentional," a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

3 *Collier on Bankruptcy* ¶ 523.16[1], at 523–110 (Lawrence P. King ed., 15th ed.1996).

This definition has been quoted with approval by the Court of Appeals for the Sixth Circuit. *Perkins v. Scharffe*, 817 F.2d 392, 394 (6th Cir.), *cert. denied*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987). *See also Wheeler v. Laudani*, 783 F.2d at 615 and *Vulcan Coals, Inc. v. Howard*, 946 F.2d 1226 (6th Cir.1991).

The Court concludes that in several respects, Lazar's professional conduct in representing Swanner was wrongful and intentional, would necessarily produce harm, and was without just cause or excuse. He filed Swanner's divorce case knowing that the 180 day

residency requirement for jurisdiction was not met, and did not properly explain to Swanner the potential consequences of that, or the potentially viable alternatives. He signed and filed, and caused his client to sign, a complaint with a false jurisdictional allegation, knowing it to be false. He did not advise Swanner or the court of the potential defect, and obtained an *ex parte* order on the basis of the false jurisdictional allegation in the complaint. He did no legal research to determine the potential consequences of this course of action.[3] This ill-conceived strategy was doomed to fail and was fraught with potentially dangerous consequences for both Lazar and Swanner, most of which eventually occurred. Lazar must have understood the substantial and unnecessary risks involved in his strategy. Given the trust that Swanner obviously placed in him and his professional judgment, as well as her interest in her child, his chosen course of conduct was unconscionable.

Swanner's claim of nondischargeability is similar to the claim sustained in *Perkins v. Scharffe*. In that case, the Sixth Circuit affirmed a judgment of nondischargeability of a state court judgment for professional malpractice based on the following facts:

This case had its genesis in the medical-podiatric treatment of appellant Betty L. Perkins by the appellee, Dr. Scharffe, which both the Bankruptcy and District Judges correctly characterized as being absolutely appalling. The proof showed that Dr. Scharffe unnecessarily injected Mrs. Perkins's left foot with an unsterile needle or contaminated medication. Thereafter, he failed to perform timely tests when resultant infection was apparent. Dr. Scharffe then ignored the results of belated tests that identified the offending bacteria and disclosed the appropriate drugs and drug strengths to combat them. Finally, Dr. Scharffe failed to hospitalize Mrs. Perkins when hospitalization was urgently needed.

*Perkins v. Scharffe*, 817 F.2d at 393. In the present case, even assuming that Lazar did not instruct Swanner that the Michigan order had priority and that she should bring Jake back to Michigan, the Court must conclude that Lazar's conduct in prosecuting Swanner's divorce action was as "appalling" as that of the debtor in *Perkins v. Scharffe*.

### IV.

The only support that Lazar offers for his conduct in representing Swanner is the decision of Oakland County Circuit Judge Mester dated August 18, 1993. (Exhibit B attached to Debtor's Brief in Support of Motion to Dismiss, filed February 21, 1996) That decision was entered in the second divorce case and asserted jurisdiction over the custody dispute under the UCCJA, and concluded that the court's initial *ex parte* order was valid even though the court lacked jurisdiction at the time.

There are two reasons why this decision does not support Lazar's position in the present proceeding. First, the issue at that time was the court's jurisdiction over the custody issue under the UCCJA. Judge Mester did not condone or approve of Lazar's conduct in filing a divorce complaint in circumstances where the jurisdictional residency requirement was not met, in signing and filing a complaint with a false allegation of jurisdiction, or in failing to disclose the defect. Second, Judge Mester's decision was reversed by the Court of Appeals.

At the conclusion of the hearing on the plaintiff's motion for summary judgment, this Court offered Lazar one further opportunity to provide to the Court any support for his position that it was a proper strategy for him to file a divorce complaint knowing that the jurisdictional residency requirement was not met, and that there was "just cause or excuse" for his conduct. He provided none.[4]

---

**3.** Indeed the only Michigan cases on point hold that an order in a case filed without jurisdiction is void. *Lewis v. Lewis*, 153 Mich.App. 164, 395 N.W.2d 44 (1986); *Pierson v. Pierson*, 132 Mich. App. 667, 347 N.W.2d 779 (1984).

**4.** Lazar's supplemental brief cites two cases, *Sedlar v. Sedlar*, 165 Mich.App. 71, 419 N.W.2d 18

(1987) and *Blaskowski v. Blaskowski*, 115 Mich. App. 1, 320 N.W.2d 268 (1982). These cases deal with an issue of "established custodial environment," not with the propriety of filing a divorce complaint when the jurisdictional residency requirement is not met.

## V.

Accordingly, the Court concludes that Swanner's motion for summary judgment should be granted. An appropriate order will be entered.